IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

United States District Court
Southern District of Texas
ENTERED

FEB 2 6 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JANETTE KAY BOWERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-409 |
| | § | |
| THE CITY OF GALVESTON, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Plaintiff Janette Kay Bowers brought this lawsuit against Defendant City of Galveston based on allegations of gender discrimination and retaliation under Title VII, age discrimination under the Age Discrimination in Employment Act ("ADEA"), and a violation of the Whistleblower Act. Before the Court, upon the consent of the parties, is Defendant's Motion for Summary Judgment (Docket Entry ("Doc.") No. 17), to which Plaintiff filed a Response (Doc. No. 40), and Defendant then filed a Reply. (Doc. No. 42). After carefully considering the pleadings, Defendant's Motion for Summary Judgment, the Response and Reply, all the evidence submitted, and the applicable law, the Court, for the reasons discussed below, **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 17), and **DISMISSES** this action in its entirety.

## I. BACKGROUND

Plaintiff, Janette Kay Bowers, was an at-will employee of the City of Galveston Island Transit Department from March 2003 to September 28, 2005. She worked as a trolley driver. During her employment, Bowers was involved in three separate accidents as a public transportation

1

trolley operator. Her first accident, which occurred on June 21, 2003, was determined to be "preventable" by the Accident Board. (Doc. No. 17, Ex. C). In this accident, instead of using an authorized supervisor, as directed, Bowers used a passenger from her trolley to help her back the trolley up and, in doing so, she backed up into a concrete pillar resulting in damage to the rear bumper of the trolley. (*Id.*). Despite the fact that this accident was determined to be "preventable," Bowers was not terminated. Bowers was then involved in a second accident on September 27, 2004, and this accident was found by Island transit personnel to be "non-preventable," and, thus, she was not reprimanded. The latest accident, which occurred September 28, 2005, resulted in Bowers derailing the trolley she was operating. Following the investigation of that accident, Michael Worthy, the Director of Transportation for the City, terminated Bowers on September 29, 2005. (Doc. No. 17, Ex. L).

Thereafter, Bowers brought this action against the City of Galveston claiming that she was wrongfully terminated in violation of federal and state law. In particular, Bowers alleges that the City of Galveston: (1) discriminated and retaliated against her based on gender in violation of Title VII; (2) discriminated against her based on her age in violation of the ADEA; and (3) retaliated against her in violation of the Texas Whistleblower Act. Bowers seeks damages in the form of lost wages, lost earning capacity, lost pension or retirement benefits, lost reputation, and mental anguish. Bowers also seeks attorney fees and costs. Defendant maintains that Bowers was terminated, not for discriminatory reasons or in retaliation, but for legitimate performance issues. **II. APPLICABLE STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). "An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

Under Rule 56(c), the moving party bears the initial burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *see also, Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

Where the moving party meets its initial burden under Rule 56(c), the burden then shifts to the nonmovant to show a genuine issue of material fact exists that precludes summary judgment. "[T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)) (emphasis in original); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also, Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid summary judgment, the nonmoving party must adduce evidence which creates a fact issue.").

At the summary judgment stage, the court views the facts in a light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmovant, but only when "there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776,

167 L.Ed.2d 686 (2007); *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) ("[T]he nonmoving party may not rest on the mere allegations or denial of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."). "[A] nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions." *Mace v. City of Palestine*, 333 F.3d 621, 624 n. 7 (5th Cir. 2003); *see also Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("only evidence–not argument, not facts in the complaint–will satisfy the burden."). Nor can the nonmovant overcome summary judgment by showing "some metaphysical doubt as to the material facts" in an attempt to create a genuine dispute. *Matsushita*, 475 U.S. at 584-86.

## III. ANALYSIS

### A. Title VII Claims

Bowers alleges that she was discharged in violation of Title VII. (Doc. No. 17, Ex. G at 2, ¶¶ 5-8). Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2. A plaintiff may prove employment discrimination through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Direct evidence is evidence that, if believed, proves intentional discrimination without inference or presumption. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). It "includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 329 (5th Cir. 1994)). If the plaintiff provides direct evidence, then the burden shifts to the employer to prove that the same adverse action would have occurred regardless of discriminatory animus. *Laxton*, 333 F.3d at 578.

4

Absent direct evidence of intentional discrimination, a plaintiff's claim is governed by the burden shifting scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-02 (1973). Under the *McDonnell Douglas* test, if a plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* at 802; *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The defendant's burden is satisfied if it produces evidence, which "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Price*, 283 F.3d at 720 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original). "If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out." *Id.* (citing *Hicks*, 509 U.S. at 510-11). "The plaintiff must then introduce sufficient evidence to create a genuine issue of material fact" that defendants were motivated by discriminatory animus. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Plaintiff meets this burden by showing either (1) that defendant's articulated reason was pretextual (pretext alternative), or (2) that plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative). *Id.* If plaintiff meets this burden by demonstrating discriminatory animus, "it falls to the defendant to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Id.* at 312-13 (quoting *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995).

In determining whether summary judgment is appropriate, courts should consider "the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may

be considered." *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 148-49 (2000).  Personal belief or speculation is insufficient to create a fact issue as to pretext. *McKey v. Oxidental Chemical Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex. 1997).  "Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against." *Id.*

## 1. *Prima Facie Case of Discrimination based on Gender*

Bowers alleges that she was discharged by the City of Galveston based on gender discrimination.  In particular, she claims she was discharged whereas a male employee who had done the same thing was not.  Defendant argues that even assuming that Bowers established a *prima facie* case of gender discrimination, it had a legitimate, non-discriminatory reason for terminating her employment.  (Doc. No. 17 at 6-11).

Under *McDonnell Douglas*, a plaintiff has the initial burden of establishing her *prima facie* case of gender discrimination by showing that:  (1) she is a member of a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; (4) for which a male employee would not have been discharged.  *Okoye v. Univ. of Texas Houston Health Science*, 245 F.3d 507, 513 (5th Cir. 2001); *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980). In the present case, Bowers alleges that she is female, that she was qualified for the position, that she suffered an adverse employment action when she was terminated from her employment, and that, unlike her, a male employee in a similar situation was not terminated.

Having alleged a *prima facie* case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its termination decision.  In support of its decision, the City of Galveston offers evidence that, as a trolley operator, Bowers was required to conduct a pre-trip inspection of her trolley and fill out a "Vehicle Condition Card" before leaving the yard.  (Doc. No.

6

17, Ex. D; Doc. No. 40, Ex. 4). This inspection was required of every trolley operator anytime a trolley was placed into service. In addition, when the trolley was returned, the operator was required to complete the form to notify the department of any problems with the particular trolley during its operation. On the date of the accident, Bowers filled out and submitted the "Vehicle Condition Card" and, as reflected on the card, Bowers checked "ok" for the brakes and "ok" for the "Dead Man Switch." (Doc. No. 17, Ex. D; Doc. No. 42, Ex. 2). The Dead Man's Switch, located in the console in the front of the trolley, must be flipped to the "on" position in order for the Dead Man's pedal to function. (Doc. No. 42, Ex. 2). The Dead Man's pedal is a foot pedal that the trolley operator stands on to allow the trolley to operate. (Doc. No. 17, Ex. F at 41:10-25). The pedal is there for the sole purpose of acting as a kill switch in the event the trolley operator somehow becomes incapacitated. When the Dead Man's pedal is operating correctly, the trolley will come to a stop when the operator's foot comes off of the pedal. During her deposition, Bowers testified that she understood the function and purpose of the Dead Man's pedal. (Doc. No. 17, Ex. F at 41:10-25).

Bowers claimed that she tested the operation of the Dead Man's pedal during her pre-trip inspection and that it worked. (Doc. No. 17, Ex. F at 35:20-25; 36:1-3). Despite her claim that the Dead Man's pedal worked earlier that morning, Bowers maintains that when she attempted to stop the trolley, just prior to the derailment by taking her foot off the Dead Man's pedal, it did not work. (Doc. No. 17, Ex. F at 49:19-20). Bowers was unable to stop the trolley and it derailed. Although the speed of the trolley before the accident was not determined, the police or incident report noted that Bowers "had a history of speeding." Bowers, of course, disputes the assertion in the police report that she was speeding or had a history of speeding, however, the undisputed evidence reveals that the trolley was traveling with enough momentum to run through the five-inch solid metal stops

7

on the track, leave the track, hit a one-ton boulder and propel it forward two feet. (Doc. No. 17, Exs. K & M).

Island Transit personnel arrived on the scene shortly after the accident to commence an investigation. During their investigation, they noted that the Dead Man's Switch in the console was in the "off" position (Doc. No. 17, Ex. J), which, Defendant maintains could only mean one of two facts was true: (1) Bowers lied about checking the Dead Man's pedal that morning because it would not have worked if the Dead Man's Switch was in the "off" position; or (2) Bowers flipped the Dead Man's Switch to the "off" position so that she would not have to stand on the Dead Man's pedal all day, thus, explaining why the pedal did not work at the time of the accident.

Following the investigation of September 28, 2005 accident, Michael Worthy, the Director of Transportation for the City of Galveston, notified Bowers that her employment was being terminated. (Doc. No. 17, Ex. L). Mr. Worthy explained the basis for Bowers' termination in a letter which provided the following:

> On September 28, 2005 your trolley derailed at the end of the track at UTMB. You stated that your hand brake failed as you were trying to bring the trolley to a stop then you engaged the dead man pedal and it failed also, then causing the trolley to run over the track stops. The maintenance department witnessed that the dead man switch was never activated and your vehicle conditional card indicated that it was OK. It is apparent that you did not properly check your equipment during your pre-trip inspection because you stated it was OK. We conducted a thorough investigation of the equipment after getting it back on track and found that the hand brake and dead man pedal works.
>
> This action of September 28, 2005 is a direct violation of Island Transit Policies and Procedures:
>
> • Chapter 11 Section 11.2—"Simply checking of the pre-trip inspection part of the vehicle  condition card without actually performing the inspection is considered falsification of company records."

8

- Chapter 17 Section 17.02B "Fail to properly inspect the vehicle before leaving the yard.["]

Therefore, your employment with the City of Galveston is terminated effective September 29, 2005.

(Doc. No. 17, Ex. L).

Bowers maintains that she was discriminated against because, while she was terminated, male employees involved in similar accidents were not discharged. Defendant disputes Bowers' claim of disparate treatment. Under the Fifth Circuit's standard, a plaintiff must show that "similarly situated" employees were treated differently by demonstrating the disparate treatment occurred in "nearly identical" circumstances. *Mayberry v. Vought Aircraft*, 55 F.3d 1086, 1090 (5th Cir. 1995). While suggesting more than one male employee was treated more favorably than her, Bowers offers evidence of only one other occurrence that took place at the same location involving another trolley operator by the name of Todd Baranowski. (Doc. No. 40, Ex. 3). The evidence before the Court reflects that on March 16, 2005, Mr. Baranowski experienced some brake problems with his trolley at the end of the run, however, because he was not operating the trolley at a high rate of speed, he was able to bring the trolley to a stop without it derailing. An investigation was conducted which found that there was no evidence that Baranowski was traveling fast and, thus, Michael Worthy, Director of Transportation, determined that Baranowski should not be terminated for the incident. Following this incident, Mr. Worthy decided, as an additional safety measure, to install five-inch metal stops at the end of the tracks and also placed a one-ton boulder at the end of the line. (Doc. No. 17, Exs. H, I, & M).

Defendant argues that, unlike Baranowski's incident, the investigation of Bowers' accident revealed that the Dead Man's Switch was in the "off" position which, as mentioned, could only result

9

in one of two conclusions. Further, unlike Baranowski's incident, Defendant had evidence that Bowers must have been driving the trolley at a high rate of speed because it jumped the five-inch stops (put in after Baranowski's incident), breaking off the stops in the process, and the trolley still had enough momentum to push the one-ton boulder approximately two feet from its original position. Finally, unlike Baranowski, Defendant also considered reports that Bowers had a history of driving the trolley too fast. (Doc. No. 17, Exs. J & M). Thus, Defendant argues that any disparity of punishment was due to the difference in conduct, rather than motivated by gender. The Court agrees. Defendant has produced sufficient evidence which "*taken as true*, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Price*, 283 F.3d at 720 (quoting *Hicks*, 509 U.S. at 509). Accordingly, the Court finds Defendant has fulfilled its burden of producing evidence to show a legitimate, non-discriminatory reason for Bowers' termination and "the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out." *Price*, 283 F.3d at 720 (italics added).

Thus, the burden shifts back to Bowers to introduce evidence sufficient to create a jury question that the Defendant was motivated in its decision to terminate her due to discriminatory animus. Bowers attempts to counter that Defendant's stated reason for termination is false because the brakes on the trolley failed and there is no evidence that she falsified the inspection card or that she was speeding at the time of the derailment. Bowers' contentions will not suffice. It is well-established that Title VII does not protect an employee from unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997). If based on a good faith belief with no discriminatory

influences, an employer can make an incorrect employment decision and the court will not try the validity of the reason. *Mayberry*, 55 F.3d at 1091.

In summary, the Court finds that Bowers has presented no competent summary judgement evidence that gender played any role at all, much less a motivating one, in the decision to terminate her. Instead, the competent summary judgment evidence before this Court establishes that the City of Galveston terminated Bowers based on her performance in operating the public transportation trolleys. The evidence erodes any probability that a reasonable jury could find that Defendant's decision to terminate and replace her was a discriminatory employment action based on gender. Bowers' speculation and conclusory allegations will not suffice. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Bowers' Title VII claim of gender discrimination.

2. *Retaliation Under Title VII*

Bowers also asserts a retaliation claim under Title VII. (Doc. No. 17, Ex. G at 2, ¶ 8). Title VII of the Civil Rights Act of 1964 forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). The Court applies the *McDonnell Douglas* burden shifting framework to Bowers' retaliation claim. *See Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).

To establish a *prima facie* case of unlawful retaliation under Title VII, a plaintiff must establish that: (1) she engaged in protected activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001); *Long v.*

11

*Eastfield Coll.*, 88 F.3d 300, 304 (5ᵗʰ Cir. 1996) (citing *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5ᵗʰ Cir. 1983)). "Protected activity" is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a); *Evans v. City of Houston*, 246 F.3d 344, 352-53 (5ᵗʰ Cir.2001). To demonstrate causation, the employee "must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5ᵗʰ Cir.1999). If the plaintiff presents evidence supporting a *prima facie* case, then the defendant must show a non-retaliatory, legitimate reason for the adverse action. Once the defendant meets this burden, the plaintiff must in turn offer evidence to create a genuine issue of material fact that the defendant's reason is not true, but is instead a pretext for discrimination. *Id.*

Defendant maintains that Bowers has failed to establish a *prima facie* case of retaliation under Title VII. Without question, Bowers engaged in protected activity under Title VII when she filed her charge of discrimination (Doc. No. Ex. G, Attachment A), however, this occurred after her termination. (Doc. No. 17, Ex. F (Bowers Deposition)). Although "the protection afforded by Title VII is not limited to individuals who have filed formal complaints of discrimination, but also extends to informal protests," *Patton v. United Parcel Service, Inc.*, 910 F.Supp. 1250, 1268 (S.D. Tex. 1995), the competent evidence before the Court reveals no grievances or complaints or informal protests filed by Bowers. Thus, Bowers has failed to establish a *prima facie* claim because no retaliation could have occurred.

Even assuming Bowers had established a prima facie case of retaliation, as discussed, Defendant has articulated a legitimate, non-discriminatory reason for its actions. In response,

Bowers attempts to suggest that Lila Zuniga retaliated against her by terminating her employment after Bowers allegedly spurned Zuniga's unwanted sexual advances. Her assertions are unavailing. Contrary to Bowers' claim, Lila Zuniga had nothing to do with her termination decision. *Rios v. Rossotti*, 252 F.3d 375 (5th Cir. 2005) (law requires ultimate decision maker be person who made decision). In fact, there is no evidence that Zuniga influenced, recommended or made the decision to terminate Bowers' employment. Instead, the undisputed evidence clearly reveals that Mr. Worthy was the ultimate decision maker who made that determination. While Bowers presents unsupported assertions that she "heard" Zuniga had influence over Mr. Worthy because she had allegedly had evidence of a past indiscretion by Mr. Worthy in the workplace (Doc. No. 17, Ex. F at 105:12-18), there is simply no competent summary judgment evidence that Zuniga had any influence over Mr. Worthy's decision to terminate Bowers after she derailed the trolley on September 28, 2005. Instead, the competent evidence before this Court, reflects that Mr. Worthy was unaware of any problems Bowers allegedly had with Zuniga and his decision to terminate Bowers was based on her performance operating the public transportation trolley. Moreover, as conceded by Bowers in her deposition testimony, she never thought that Michael Worthy, as the sole decision maker, discriminated against her based on her age or gender. (Doc. No. 17, Ex. F at 55:3-6).

In conclusion, Bowers presents no summary judgment evidence which creates a genuine issue of fact that the legitimate, non-discriminatory reasons discussed above were pretextual and that the real reason that she was terminated was to retaliate against her for having engaged in protected activity under Title VII. *See e.g., Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (affirming grant of summary judgment for defendant employer in retaliation case where plaintiff failed to raise a material fact issue that a supervisor "had a retaliatory motive when he ultimately

decided to deny her the interim promotion.").   Although Bowers believes this action was taken in retaliation for allegedly speaking out on issues of compliance with Department of Transportation laws, she offers no facts to support her conclusory allegations.   Bowers subjective belief that she was a victim of retaliation is insufficient to support the claim.  *Id.*; *see also*, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).   The Court, therefore, **GRANTS** Defendant's Motion for Summary Judgment on Bowers' Title VII retaliation claim.

### B. ADEA Claim

Bowers alleges that her termination was unlawful under the ADEA.   29 U.S.C. § 623(a)(1). (Doc. No. 17, Ex. G at 2-3, ¶ 9-11).   Under the ADEA, "it shall be unlawful for an employer ... to discharge any individual ... because of such individual's age."  *Id.*   To prevail, a plaintiff is required to make a *prima facie* case of age discrimination by establishing the following four elements: (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age.  *See Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir.1993); *Fields v. J.C. Penney Co.*, 968 F.2d 533, 536 (5th Cir.1992).   If the plaintiff proves these elements, a presumption of discrimination arises, which the defendant must then rebut by articulating a legitimate, nondiscriminatory reason for the discharge.  *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 n. 19 (5th Cir.1992).   If the employer satisfies this burden, the presumption of age discrimination established by the employee's *prima facie* case dissolves, and the "ultimate question [is] discrimination vel non."  *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981); *Mayberry*, 55 F.3d at 1090.

14

Bowers sets forth the first three prongs of her *prima facie* case—she was terminated; she was qualified; and she was a member of the protected class of employees 40 or older. However, as to the fourth prong, Bowers has neither alleged nor shown that she was replaced by a younger employee. In fact, Bowers testified that she has no idea who, if anyone, replaced her after she was terminated. (Doc. No. 17, Ex. F at 20:3-4; 26:10-17). However, even to the extent that Bowers suggests that Mr. Baranowski, a younger individual, replaced her, it would seem to stretch the requisites of this element because Mr. Baranowski was already employed by the City as a trolley driver when Bowers was terminated.

Nevertheless, assuming for the sake of argument that Bowers established a *prima facie* case under the ADEA, Defendant has articulated a legitimate, non-discriminatory reason for terminating Bowers. Thus, as discussed, the burden then shifts back to Bowers to present evidence establishing pretext. A plaintiff can establish pretext either directly, by showing a discriminatory reason motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable. *Burdine*, 450 U.S. at 253. In either respect, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253)). In the instant case, Bowers presents no competent summary judgment evidence of pretext and, thus, fails in her burden. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Bowers' ADEA claim.

### C. Whistleblower Statute Claim

Bowers alleges that the City terminated her in violation of the Texas Whistleblower Act. (Doc. No. 17, Ex. G at 3, ¶¶ 13-17). The Texas Whistleblower Act provides:

15

A state or local governmental entity may not suspend or terminate the
employment of ... a public employee who in good faith reports a violation of
law by the employing governmental entity or another public employee to an
appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004). Thus, to prevail on a Whistleblower Act claim

a plaintiff must establish (1) that she was a public employee; (2) that the defendant was a state

agency or local government; (3) that she reported in good faith a violation of law (4) to an

appropriate law enforcement agency, and (5) that she suffered retaliation as a result of making the

report. *Id.*; *Duvall v. Tex. Dep't of Human Servs.*, 82 S.W.3d 474, 478 (Tex.App.–Austin 2002, no

pet.); *see also, Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex.1995) (explaining

the causation element). A "report" is given its ordinary meaning. *Delgado v. Jim Wells County*, 82

S.W.3d 640, 643 (Tex.App.–San Antonio 2002, no pet.). A "law" is a state or federal statute, an

ordinance of a local governmental entity, or a rule adopted under a statute or ordinance. TEX. GOV'T

CODE ANN. § 554.001(1) (Vernon 2004). A public employee who sues under the Whistleblower Act

has the burden of proof. TEX.GOV'T CODE ANN. §554.002; §554.004(a); *Hurley v. Tarrant County*,

232 S.W.3d 781, 786 (Tex.App.–Fort Worth, 2007, no pet.). Such a plaintiff must demonstrate all

the requisite elements of the action by a preponderance of the evidence. *City of Fort Worth v.

Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000) (citing *Dept. of Human Servs v. Hinds*, 904 S.W.2d 629, 633

(Tex. 1995).

      In her amended complaint, Bowers alleges she was a public employee, that the City of

Galveston is a local government, that she reported in good faith a violation of law to an appropriate

law enforcement agency, and that she suffered retaliation as a result of making the report. (Doc. No.

17, Ex. G). In particular she alleges "[o]n or before September 29, 2005, acting in good faith [she]

reported the [Tx]DOT violations to her direct supervisor [Ms. Lila Zuniga] and eventually to the

[Tx]DOT Office of the Inspector General." (Doc. No. 17, Ex. G at 3, ¶ 16). Bowers further alleges that "[a]fter discovering that [she] had informed the appropriate law enforcement authorities of her illegal acts, Lila Zuniga discharged [her] from her position as a trolley operator for the City of Galveston. (Doc. No. 17, Ex. G at 3, ¶ 17). Thus, Bowers appears to allege a *prima facie* case under the Texas Whistleblower's Act.

Defendant maintains that Bowers' claim under the Texas Whistleblower's Act fails as a matter of law because she reported no violations. Defendant points to Bowers' deposition testimony in which she clearly stated that she did not contact anyone personally about the alleged violations. (Doc. No. 17, Ex. F at 82:3-13). In particular, in response to questions posed by defense counsel, Bowers testified as follows:

> Q:  Again, why is it—you're making the claim that they continue to correspond with him who knows nothing about it except hearsay?
>
> A: All I know is he said he just inquired.  He said, "Who can my wife speak to about the trolleys in Galveston?"
>
> Q: Okay.  Did you ever get an answer on that question.
>
> A: No.
>
> Q: So you didn't report—you or him neither reported any type of violation?
>
> A: I don't know what he did.  I don't know if it was a form of a report or a request.  All he told me is that he had contacted five different agencies, and that's all I've ever said, its been contact.  I didn't say I wrote down a report. I didn't say I got a report.  I just said that my husband contacted these five different agencies.
>
> Q: Has (sic) any of them gotten back to you, Mrs. Bowers, —
>
> A: No.
>
> Q: —to this day?

17

A: No.

(Doc. No. 17, Ex. F at 86:17-25 - 87:1-19).

Notwithstanding her deposition testimony, Bowers submitted an affidavit from her husband, Harry Bowers, in which he stated that his wife voiced her concerns to him about the safety and proper maintenance of the trolleys and she requested that he report the unsafe conditions on her behalf to the Texas Department of Transportation ("TxDOT"). Mr. Bowers stated that he reported his wife's concerns to the TxDOT prior to her termination. In his affidavit, Mr. Bowers also stated that he contacted Congressman Ron Paul's office to report their concerns. (Doc. No. 40, Ex. 8).

The Court is not persuaded by Defendant's argument that no alleged violations were reported. The Texas Whistleblower's Act is intended to have a remedial purpose and is, thus, construed liberally. *Castaneda v. Texas Dept. of Agriculture*, 831 S.W.2d 501, 503 (Tex.App.–Corpus Christi 1992, writ denied). Thus, the telephone conversation that Bowers' husband had with TxDOT would appear to suffice. *See Id.* at 503-04 (holding telephone conversation in which employee disclosed what he thought were violations of law was sufficient under the Act, even though employee's disclosure was based on rumors and innuendo, not personal knowledge). Further, while Defendant argues that Bowers did not report a violation of the law, the law provides that an employee may seek relief despite the fact that an investigation revealed that technically no legal violation had occurred. *Lastor v. City of Hearne*, 810 S.W.2d 742, 744 (Tex.App.–Waco 1991, writ denied).

Nevertheless, Bowers claim under the Texas Whistleblower's Act still fails as a matter of law because the competent summary judgment evidence before this Court does not support that she was discharged in retaliation for making any such report. Rather, the competent summary judgment evidence clearly establishes that Defendant was not even aware of any such report made to TxDOT

18

until *after* Bowers was terminated.  (Doc. No.  42, Ex. B; Doc. No. 40, Ex. 2 at 76-77; 79-80).

Bowers offers no evidence in dispute.  Consequently, Bowers fails to create a genuine issue of

material dispute on the question of causation.

The Court **GRANTS** Defendant's Motion for Summary Judgment on Bowers' Title VII

claim of gender discrimination.

## CONCLUSION

For all these reasons, it is **ORDERED** that Defendant's Motion for Summary Judgment

(Doc. No. 17) is **GRANTED** and that Plaintiff's action against Defendant, the City of Galveston,

Texas, is **DISMISSED**, with prejudice, in its entirety.

**IT IS SO ORDERED.**

**DONE** at Brownsville, Texas, this _____ **26th** _____ day of February, 2009.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE